UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

v.                           Case No. 05-CR-296

ALEJANDRO ALCANTARA-HERNANDEZ,

      Defendant.

**MEMORANDUM**

Defendant Alejandro Alcantara-Hernandez, an alien from Mexico, was indicted and pled guilty to illegal reentry into the United States following his previous deportation and removal contrary to 8 U.S.C. § 1326(a) and (b). His previous deportation followed his conviction in Wisconsin state court on a plea of no contest to the crime of child enticement in violation of Wis. Stat. § 948.07(3), which the government contends constitutes an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43).[1] Based upon his previous conviction, the government contends that the defendant is subject to an enhancement of his potential punishment under the United States Sentencing Guidelines. *See* U.S.S.G. § 2L1.2(b)(1)(C). Defendant, on the other hand, contends

---

[1] The parties assume, at least for present purposes, that child enticement in violation of Wis. Stat. § 948.07(3), which involves causing or attempting to cause a child to enter a secluded place with the intent of exposing a sex organ to the child, constitutes an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43). Although actually exposing oneself to a child has been held to constitute an aggravated felony, *see United States v. Zavala-Sustaita*, 214 F.3d 601 (5th Cir. 2000), the court has been unable to find any case holding that enticing a child with intent to expose oneself meets the required definition. The parties may want to consider this issue more carefully prior to sentencing.

that his plea to the state charge that led to his deportation was constitutionally invalid, and thus the resulting conviction cannot serve as a basis for an enhancement of his potential punishment under U.S.S.G. § 2L1.2(b)(1)(C). For the reasons that follow, I find *United States v. Garcia-Lopez*, 375 F.3d 586, (7th Cir. 2004) dispositive and conclude on the basis of the plain language of U.S.S.G. § 2L1.2(b)(1)(C) that the enhancement applies.

## BACKGROUND

On September 17, 2004, the defendant entered a plea of no contest to a charge of child enticement in Winnebago County Circuit Court. More specifically, the defendant was charged with inviting a fourteen-year-old girl to come over to an apartment and view his penis. The defendant's plea to the state charge was entered pursuant to a plea agreement under which the state agreed to recommend a sentence of three years probation and no jail time. In addition, the assistant district attorney advised the court that she had originally offered to move to reopen the case and amend the charge from a felony to a misdemeanor if the defendant successfully completed his probation. Since that offer had been made, however, the Wisconsin Court of Appeals had issued a decision in which it reaffirmed a previous decision holding that such agreements were unenforceable and that a plea entered in reliance on such an agreement would not be considered knowing and voluntary. *See State v. Dawson*, 2004 WI App 173, 688 N.W. 2d. 12 (2004); *State v. Hayes*, 481 N.W.2d 699 (Wis. App.1992). Based on the decision of the Wisconsin Court of Appeals, the assistant district attorney explained that she would be unable to make such a motion and, further, that she doubted the court's authority to order such an amendment. She also noted, however, that "some Courts still take the view that they have the continuing authority over a probation case to do that" and, further, if the

2

court took that position, the state would not oppose such a motion by the defense. (Ex. D. at 4.)

Despite this uncertainty, the defendant proceeded to enter a plea of no contest and was found guilty. When the parties appeared for sentencing approximately a month later, they reiterated their joint agreement for three years probation and no jail time. In addition, counsel for the defendant indicated he may, at some future point, move to amend the charge from a felony to a misdemeanor and that the state would not oppose such a motion. The court adopted the joint recommendation of the parties and placed the defendant on probation for three years. The court did not discuss the amendment issue during the sentencing hearing, but the judgment of conviction states "may be amended to a misdemeanor upon successful completion of probation." (Ex. F.)

On the basis of the conviction, the United States Department of Homeland Security, Bureau of Immigrations and Customs Enforcement (I.C.E.), initiated proceedings to remove the defendant from the United States. A final administrative removal order was issued against the defendant on August 29, 2005, and he was physically removed to Mexico via a flight from Chicago on September 9, 2005. Shortly thereafter, the Milwaukee I.C.E. Office learned that the defendant was in custody on a hold for a violation of probation at the Winnebago County Correctional Facility in Oshkosh, Wisconsin. In a subsequent interview with an I.C.E. special agent, the defendant admitted that he was an illegal alien and that he had been removed from the United States in September, 2005. He stated that he had returned to the United States just days after his removal by paying $1,000 to a smuggler and crossing the border near Nogales, Arizona. On the basis of these facts, a federal grand jury sitting in the Eastern District of Wisconsin returned a single-count indictment on December 6, 2005, charging the defendant with illegally re-entering the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). The issue now before me is whether the defendant's offense severity score under the United States Sentencing Guidelines (U.S.S.G.) for unlawfully reentering the country after

3

deportation and removal is enhanced under U.S.S.G. § 2L1.2(b)(1)(C) because of his previous conviction for an aggravated felony.

**ANALYSIS**

The defendant argues that his plea to the child enticement charge was invalid and that he is entitled to withdraw it under *Dawson*. He is in the process of seeking to withdraw the plea and to vacate his conviction in state court. Once vacated, he contends that his previous conviction cannot serve as a basis for enhancement of his sentence range under U.S.S.G. § 2L1.2(b)(1). In essence, defendant's argument is that deportation following an unconstitutional conviction cannot serve as a basis for enhancement under the guidelines.

In so arguing, the defendant seeks to distinguish this case from *United States v. Garcia-Lopez*, 375 F.3d 586 (7th Cir. 2004). In *Garcia-Lopez*, the defendant argued that he was not subject to the enhanced penalty provisions in § 2L1.2(b)(1) because he had successfully vacated his underlying state aggravated felony conviction after he illegally reentered the United States but prior to his sentencing for the federal offense. The underlying conviction in *Garcia-Lopez*, which was also entered by a Wisconsin court, was vacated based upon the state court's failure to advise the defendant of the possible adverse immigration consequences that would attend a plea of guilty. A specific Wisconsin statute requires that a defendant be warned of the possibility of deportation prior to entry of plea. In *State v. Douangmala*, 2002 WI 62, 646 N.W.2d 1, the Wisconsin Supreme Court held that the failure to issue such a warning renders the plea of guilty or no contest subject to withdrawal regardless of whether the defendant was aware of the deportation consequences or not. It was on the basis of this holding that Garcia-Lopez successfully challenged his plea to the aggravated felony that had resulted in his deportation. Having successfully vacated his plea, the

4

defendant argued that the enhancement could not be applied. The district court agreed and declined to impose the sixteen-level increase under the guidelines that would otherwise apply based upon the defendant's prior conviction.

On appeal, the Seventh Circuit reversed. The court concluded that the enhancement applied despite the fact that the conviction was vacated based on the plain language of the statute:

> The plain language of § 2L1.2(b)(1)(A)(ii) indicates that the appropriate inquiry is whether the defendant had been convicted of a crime of violence *at the time of deportation*. Nothing in the guidelines suggests that the analysis should consider whether the conviction has been vacated subsequent to the deportation but prior to the sentencing for the reentry offense. *See United States v. Luna-Diaz*, 222 F.3d 1, 4 (1st Cir. 2000)("The guideline speaks of time, not possession or status. . . . the guideline. . . is in the past tense, which suggests that the present status of the aggravated felony conviction is irrelevant. It is impossible to alter the historical fact that the defendant was convicted, and then deported."); *United States. v. Cisneros-Cabrera*, 110 F.3d 746-748 (10th Cir. 1997). Despite the 2003 vacatur of Garcia-Lopez's 1996 armed robbery conviction, it is still the case that at the time of his deportation in 1999, he had been convicted of an aggravated felony. Therefore, the sixteen-level enhancement under § 2L1.2(b)(1)(A)(ii) applies to Garcia-Lopez's conviction for violation of 8 U.S.C. § 1326(a) and (b).

*Garcia-Lopez*, 375 F.3d 587-88 (emphasis in original).

The defendant recognizes the authority of *Garcia-Lopez*, but argues that it is distinguishable because the defendant's plea in that case was vacated for what the Court characterized as "a technicality, not because of an error of law, subsequently discovered evidence, or constitutional defect." 375 F.3d at 588. In his case, by contrast, the defendant argues that his plea was unknowing and involuntary. A conviction on an involuntary and uninformed plea, he contends, constitutes a serious violation of his constitutional rights. Moreover, the court in *Garcia-Lopez* went on to note that the government conceded that the enhancement would not apply if the underlying conviction was vacated because of an actual showing of innocence and that to apply it where the conviction was vacated because of egregious errors of law or constitutional defect "might also raise due process

5

concerns . . . ." 375 F.3d at 589. The defendant argues that the facts of his case establish a serious violation of constitutional rights. Thus, he argues, the very possibility envisioned by the court in *Garcia-Lopez* is present here.

But unlike *Garcia-Lopez*, the defendant's conviction here has not been vacated, at least as of yet. This fact is crucial. Absent a higher court overturning or vacating the previous conviction, it remains of record and is presumed valid. *United States v. Dahler*, 171 F.3d 441, 443 (7th Cir. 1999). Moreover, the facts surrounding the defendant's plea are not so clear that the success of his motion to vacate is assured. The record suggests that both he and his attorney were advised of the very case that he now claims renders his earlier plea invalid. An argument can be made that at the time he entered his plea, he knew the trial court would have no authority to later reopen the case and reduce the charge to a misdemeanor. He entered his plea anyhow, apparently hoping that the judge might be willing to ignore the law. If that was the case, he may have difficulty convincing the state court that his plea was unknowing. Of course, this court cannot anticipate whether the Wisconsin courts will grant defendant's motion, but the fact remains that even at this late date his conviction in state court remains of record. He therefore stands in a far different position than Garcia-Lopez.

Even if the defendant is ultimately successful in having his underlying state court conviction vacated, however, the result will not change.[2] While the government acknowledged in *Garcia-Lopez* that the enhancement would not apply if the underlying conviction was vacated upon a showing of actual innocence, defendant does not argue he was actually innocent of child enticement;

---

[2] Because the defendant's state conviction has not yet been vacated, the government's contention that defendant's request for a determination of this issue is premature is not without merit. But it is clear from prior proceedings that the defendant wishes to adjourn his sentencing until his motion to vacate his state court conviction is decided. By addressing the issue at this point, both the court and the parties will know whether this matter should be adjourned to await the state court ruling.

6

only that his plea was constitutionally deficient. It is true that the *Garcia-Lopez* court also stated that enhancements based upon egregious errors of law or constitutional defect might also "raise due process concerns." 375 F.3d at 589. But this language suggests only the possibility that applying the enhancement could raise constitutional concerns and does not constitute the actual holding of the court. The court stopped short of saying that application of a § 2L1.2(b) enhancement based upon a felony conviction that was vacated because of a constitutional defect would itself violate the constitution. It is that question that defendant contends is presented here.

In *United States v. Lewis*, 445 U.S. 55(1980), the Supreme Court addressed a similar issue in reviewing a defendant's conviction for possession of a firearm by a felon. Like the defendant here, the defendant in *Lewis* challenged his conviction on the ground that the conviction that served as the predicate offense for the federal charge had been obtained in violation of his constitutional rights. In *Lewis*, the defendant claimed that his underlying felony conviction for breaking and entering had been obtained in violation of his Sixth Amendment right to counsel. He argued that basing the charge of possession of a firearm by a felon upon a conviction obtained in violation of his right to counsel was both contrary to the intent of the statute and unconstitutional in itself. The Supreme Court rejected both arguments and affirmed the conviction.

In rejecting the defendant's statutory challenge, the Court first noted that, under the plain language of the statute, the fact that the underlying felony conviction was subject to collateral attack was immaterial:

> An examination of § 1202(a)(1) reveals that its proscription is directed unambiguously at any person who "has been convicted by a court of the United States or of a State . . .of a felony." No modifier is present, and nothing suggests any restriction on the scope of the term "convicted." "Nothing on the face of the statute suggests a congressional intent to limit its coverage to persons [whose convictions are not subject to collateral attack]." *United States v. Culbert*, 435 U.S. 371, 373, 98 S.Ct. 1112, 1113, 55 L.Ed.2d 349 (1978); *see United States v. Naftalin*, 441 U.S.

7

> 768, 772, 99 S.Ct. 2077, 2081, 60 L.Ed.2d 624 (1979). The statutory language is sweeping, and its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon or a consent from the Secretary of the Treasury.

445 U.S. at 60-61.

The Court then went on to explain why the defendant's due process argument failed as well. Noting that it had previously held that an uncounseled felony conviction could not be used to enhance the punishment for certain purposes in the past, the Court held that this did not mean such a conviction was invalid for all purposes:

> Use of an uncounseled felony conviction as the basis for imposing a civil firearms disability, enforceable by a criminal sanction, is not inconsistent with *Burgett*[*v. Texas*, 389 U.S. 109 (1967)], [*United States v.*]*Tucker*,[404 U.S. 443 (1972)], and *Loper* [*v. Beto*, 405 U.S. 473 (1972)]. In each of those cases, this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction. The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational. Enforcement of that essentially civil disability through a criminal sanction does not "support guilt or enhance punishment," *see Burgett*, 389 U.S., at 115, 88 S.Ct., at 262, on the basis of a conviction that is unreliable when one considers Congress' broad purpose.

445 U.S. at 67.

The same reasoning applies here. Federal immigration laws prohibit an alien who has been deported following a conviction for an aggravated felony from reentering the United States without the permission of the Secretary of the Department of Homeland Security. The focus on the previous conviction is not on its reliability, but on the mere fact of conviction and that it was the reason for the deportation. The fact that he was deported following his conviction for an aggravated felony placed the defendant on notice that he was subject to an enhanced criminal penalty if he violated

United States law by illegally returning to the country. To paraphrase *Lewis*, Congress' judgment that an alien convicted of an aggravated felony, even if the conviction results from an error of law or a constitutional defect, is among the class of aliens who should be subject to greater penalties for illegally reentering the country after being deported is not irrational.

I recognize that in *United States v. Mejia*, 278 F. Supp. 2d 55 (D. Mass. 2003), Judge Gertner concluded that the due process concerns which were alluded to by the Seventh Circuit in *Garcia-Lopez*, and also by the First Circuit in *United States v. Luna-Diaz*, 222 F.3d 1 (1st Cir. 2000), required that the § 2L1.2(b) enhancements not be applied to a defendant whose underlying conviction was vacated because his attorney let him plead guilty to an offense for which there was no factual basis. 278 F. Supp.2d at 60. But I find nothing in Judge Gertner's analysis that explains how a defendant who, as a result of an unconstitutional conviction, is subject to criminal penalties for possessing a gun stands in a different position than a defendant who, also because of a constitutionally defective conviction, faces increased penalties for unlawfully reentering the United States. As a matter of constitutional law, both appear to be in the same position.

*Garcia-Lopez* clearly holds that, in determining the offense severity of a defendant charged with illegal reentry into the United States after deportation, the court is to look to the defendant's status at the time of deportation. This holding is grounded both in the plain language of the statute and corresponding guideline. While *Garcia-Lopez* leaves open the question of whether the enhancement can be constitutionally applied when the conviction that resulted in the defendant's deportation and removal is vacated because of a constitutional defect, I conclude that it can. An alien deported for an aggravated felony is aware of his status at the time of deportation. He has notice of the charge and potential penalty he will face if he illegally returns. If the underlying conviction that resulted in an alien's deportation is subject to collateral attack, he is free, at least

9

theoretically, to challenge the conviction and seek the permission of the Secretary of Homeland Security before attempting to reenter the United States. The defendant in this case did neither. Upon his arrival in Mexico, it appears he simply turned around and immediately returned. Under these circumstances, I see no constitutional impediment to applying the statute as it is written, especially since the Guidelines are now advisory. *See United States v. Booker*, 543 U.S. 220 (2005).

Based on the foregoing, I conclude that a previous conviction that results in an alien's deportation and removal from the United States, even if it is later vacated because of a constitutional defect, can serve as a basis of the enhancement authorized by U.S.S.G. § 2L1.2(b). Of course, the fact that the previous conviction was vacated may warrant a sentence outside of the presumptively reasonable guideline range. On this point I am in complete agreement with Judge Gertner: the fact that a defendant's prior conviction was vacated for other than "technical" reasons presents the sentencing court with a dramatically different picture of the defendant. 278 F. Supp.2d at 62. But that is an issue that I need not address at this point. For present purposes it is enough to say that regardless of whether the defendant is successful in getting his previous conviction vacated, the eight level enhancement set forth in § 2L1.2(b)(C), assuming child enticement is an aggravated felony, applies.

Dated this __3rd__ day of July, 2006.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

10

Case 1:05-cr-00296-WCG    Filed 07/03/06    Page 10 of 10    Document 25